**FILED**

**December 18, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:18 P.M. EASTERN**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **ANGELA TAYLOR,** | ) | **Docket No.: 2017-03-0481** |
| **Employee,** | ) | |
| **v.** | ) | |
| **KNOX COUNTY BOARD OF** | ) | **State File No.: 87086-2016** |
| **EDUCATION and KNOX COUNTY** | ) | |
| **GOVERNMENT,** | ) | |
| **Employer.** | ) | **Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER
## (ON-THE-RECORD DETERMINATION)

This matter came before the undersigned Workers' Compensation Judge on Angela Taylor's Request for Expedited Hearing (REH) seeking a decision on the record. Knox County did not request an evidentiary hearing. The Court issued a Docketing Notice and gave the parties until November 21, 2017, to file position statements and any objection to the admissibility of the listed documents. Upon careful consideration of the record, the Court finds it needs no additional information to determine whether Ms. Taylor is likely to prevail at a hearing on the merits of the claim and decides this matter upon a review of the written materials.

The central legal issue is whether Ms. Taylor established entitlement to a panel of neuropsychiatrists. For the reasons set forth below, the Court holds Ms. Taylor did not come forward with sufficient evidence demonstrating entitlement to a panel of neuropsychiatrists but she demonstrated entitlement to a return visit to Dr. Butler and a panel of mental health counselors.

### History of Claim

A review of the written materials revealed the following facts. Ms. Taylor tripped over a box in a walk-in freezer and struck her head on metal shelving in the course and scope of her employment as a cafeteria worker for Knox County schools. She reported the injury, and Knox County provided authorized medical treatment.

1

Ms. Taylor received initial treatment from Occupational Health Systems (OHS) on the day of the incident. She saw Physician's Assistant Heather Thompson and reported headache, double/blurred vision, and dizziness. She also reported a previous head injury after a fall with loss of her right-side peripheral vision. PA-C Thompson, under the supervision of Dr. John McElligott, diagnosed a head injury.

She remained under the care of OHS. Dr. Chris Copeland at OHS ordered brain and cervical MRIs, which were both unremarkable. He referred Ms. Taylor to Dr. Darel Butler for a neurological evaluation.

Dr. Butler reviewed the MRIs, performed a physical examination, and diagnosed chronic post-traumatic headaches, nausea, and dizziness. He prescribed Tx360 nasal application treatments and other prescription medications.

Ms. Taylor returned to Dr. Butler on March 6 and declined the Tx360 treatment. She reported worsening dizziness and confusion but stated her headaches were improving. Dr. Butler instructed Ms. Taylor to follow-up when necessary for her headaches should she opt for the Tx360 treatment; otherwise, he indicated she needed to find another neurologist on the panel for headache treatment. Dr. Butler referred Ms. Taylor to an ENT for her dizziness and to a neuropsychologist for her post-concussive syndrome.

Ms. Taylor's counsel wrote Dr. Butler for clarification about his referral to a neuropsychologist. The inquiry and response are as follows:

> As I understand, on March 6, 2017, you referred Ms. Taylor for further treatment and you referred her come under the care of an ENT physician as well as a neuropsychologist. As you may be aware a psychologist in Tennessee is not qualified to render an opinion on causation or prescribe certain medications if necessary. In order to direct proper care of Ms. Taylor, I would request that you please let us if you would recommend Ms. Taylor to be seen by a neuropsychiatrist as opposed to a neuropsychologist. I would request your response to the following question to direct appropriate medical care and treatment for Ms. Taylor.

> I recommend that as a result of her work injury of November 4, 2016, that Ms. Taylor be seen by a neuropsychiatrist for her ongoing medical treatment for post-concussion syndrome?  __X__ Yes  _____ No

> Dr. Darrell Butler, M.D.

ENT Dr. S. Mark Overholt evaluated Ms. Taylor. Dr. Overholt suspected Ms. Taylor's symptoms were related to a traumatic brain injury. He further indicated that nothing suggested historically, on physical examination, or on audiometric testing, that

2

Ms. Taylor's problems were otologic. Dr. Overholt indicated Ms. Taylor needed to see a neurologist and deferred questions about causation and impairment to the neurologist.

Ms. Taylor returned to Dr. Butler several months later. She reported persistent dizziness but no headache. Dr. Butler noted, "I had previously found nothing the (sic) refer her to ENT. They found nothing and have her come back here. I again told her I had nothing to offer." He informed Ms. Taylor that as to her dizziness, "it was a matter of healing and we cannot predict when nor how much healing [you] will ultimately get." Dr. Butler instructed her to return if her symptoms increased in frequency, severity, or duration, and made a "neuropsych referral as suggested by case manager" for her post-concussive syndrome. He again recommended Tx360 when necessary for Ms. Taylor's headaches. Lastly, Dr. Butler noted it was "ok to see Dr. Robert Roth for post traumatic syndrome."

Dr. Roth, a neuropsychologist, evaluated Ms. Taylor on September 14. He determined that Ms. Taylor functions at or near her premorbid neurocognitive abilities, which included borderline-low average intellectual ability, low average memory skills, and problems with reading. He raised concerns regarding her visuospatial skills but noted the impairment to these skills was disproportionate to the incident and inconsistent with the nature of the injury. He also stated Mr. Taylor's depression was significantly exacerbated. Dr. Roth did not recommend additional medical workup but stated Ms. Taylor should continue to work with physicians regarding post-traumatic migraine management and resolution of her dizziness. He also suggested that she consider vestibular therapy and counseling with an outpatient mental health counselor.

Knox County offered a panel of psychiatrists to evaluate causation of Ms. Taylor's reported exacerbation of her pre-existing depression and anxiety. Ms. Taylor refused to select a physician because the Knox County offered the panel for evaluation not treatment and filed the pending REH.

Ms. Taylor sustained a prior work injury in 2011 and received treatment for neck and upper back pain, headaches, and blurred vision.

**Findings of Fact and Conclusions of Law**

Ms. Taylor need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court can determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2017).

The law requires that Ms. Taylor show her alleged injury arose primarily out of

3

and in the course and scope of her employment. To do so, she must demonstrate that her injury primarily arose out of a work-related incident, or specific set of incidents, identifiable by time and place of occurrence. Further, she must show, "to a reasonable degree of medical certainty that [her work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14).

As the Appeals Board explained in *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017) (Emphasis in original):

> [A] physician may render an opinion that meets the legal standard espoused in section 50-6-102(14) without couching the opinion in a rigid recitation of the statutory definition. What *is* necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102(14) are satisfied.

Applying these principles, the Court first finds that Knox County presented no material proof to contradict the mechanism of injury Ms. Taylor alleged. Instead, the record reflects that Ms. Taylor reported the incident and Knox County completed a report of injury and provided authorized medical treatment. Thus, Ms. Taylor established a specific incident, identifiable by time and place.

Additionally, the medical evidence demonstrated Ms. Taylor suffered and received authorized treatment for post-traumatic headaches and post-concussive syndrome following the work incident. The medical records further demonstrated Ms. Taylor's work injury exacerbated her pre-existing depression.

The Court rejects Knox County's argument that Ms. Taylor's injuries are pre-existing and unrelated to her work injury. While the record establishes similar complaints following a slip and fall in 2011, Knox County introduced no evidence that the 2011 symptoms continued to exist immediately prior to the November 4, 2016 work incident. Thus, the Court concludes that Ms. Taylor is likely to prevail at a hearing on the merits in showing her current need for treatment arises primarily out of and in the course and scope of her employment.

The Court now turns to the issue of whether Ms. Taylor established entitlement to a panel of neuropsychiatrists. Under the Workers' Compensation Law, an employer must furnish medical treatment made reasonably necessary by the work accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians from which the employee shall select the authorized treating physician. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). When necessary, the treating physician shall

4

make referrals to a specialist, and the employer shall be deemed to have accepted the direct referral unless the employer provides an appropriate panel within three business days of the referral. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). Only psychologists or psychiatrists shall render psychological or psychiatric services upon the referral of an authorized treating physician. *See* Tenn. Code Ann. § 50-6-204(h).

Ms. Taylor argued she is entitled to the neuropsychiatry panel that the ATP, Dr. Butler, recommended. Knox County opposed the request, asserting it fulfilled its obligation when it authorized the direct referral to Dr. Roth, a neuropsychologist. Knox County argued Dr. Butler originally referred Ms. Taylor to a neuropsychologist and only after persuasion from Ms. Taylor's counsel agreed the referral should be to a neuropsychiatrist. Subsequently, Dr. Butler simply made referral to "neuropsych" and to Dr. Roth, which Knox County authorized.

The Court finds that Ms. Taylor has not returned to Dr. Butler following Dr. Roth's evaluation. Dr. Butler's change in referral from neuropsychologist to neuropsychiatrist occurred in March at Ms. Taylor's counsel's suggestion. Dr. Roth's evaluation by direct referral from Dr. Butler occurred in September. Without a return visit to Dr. Butler, nothing indicates that Dr. Butler finds Dr. Roth's evaluation insufficient for purposes of treatment of Ms. Taylor's posttraumatic syndrome.

Thus, the Court concludes Ms. Taylor is not entitled to a panel of neuropsychiatrists at this time but she is entitled to return to Dr. Butler. If Dr. Butler refuses to see her, Ms. Taylor is entitled a panel of neurologists to take over her care. Additionally, based upon the recommendations of Dr. Roth as an ATP by referral, the Court concludes Ms. Taylor is entitled to a panel of outpatient mental health counselors.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Taylor's request for a panel of neuropsychiatrists is denied at this time.

2. Ms. Taylor is entitled to a panel of outpatient mental health counselors for treatment of work-related injuries or conditions under Tennessee Code Annotated section 50-6-204.

3. Ms. Taylor is entitled to a return appointment with neurologist Dr. Butler. If Dr. Butler refuses to see Ms. Taylor, she is entitled to a panel of neurologists under Tennessee Code Annotated section 50-6-204.

4. This matter is set for a Status Conference on **February 15, 2018**, at **9:00 a.m. Eastern Time**. The parties must call (865) 594-0091 or (toll-free) (855) 543-5041 to participate in the Status Conference. Failure to appear by telephone may result in a determination of the issues without the party's participation.

5

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Carrier must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED December 18, 2017.**

**PAMELA B. JOHNSON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

The Court reviewed the following documents, marked as exhibits for ease of reference:

1. Petition for Benefit Determination
2. Dispute Certification Notice with attachments (83 pages)
3. Show Cause Order
4. Employee's Response to Show Cause Order with attachments
5. Request for Expedited Hearing with Affidavit (September 21, 2017)
6. Order Following Show Cause Hearing Setting Status Conference
7. Request for Expedited Hearing (October 25, 2017)
   a. Employee's Brief in Support of Request for Expedited Hearing On-the-Record
   b. Correspondence signed by Dr. Butler Regarding Recommendation for Neuropsychiatric Evaluation
   c. Affidavit of Employee
8. Notice of Deposition with attachments
9. Motion to Quash Notice of Deposition and For Sanctions
10. Employer's Response to Employee's Request for Expedited Hearing
    a. Table of Contents with attachments (112 pages)
    b. Affidavit of Adam Parson with exhibits
    c. Affidavit of Jan Benson

6

11. Motion to Compel Discovery and Response to Motion to Quash
12. Response to Motion for Sanctions
13. Docketing Notice for On-The-Record Determination
14. Response to Motion to Compel
15. Motion for Protective Order
16. Motion to Compel Physical Examination and Response to Motion for Protective Order
17. Brief in Opposition to Request for Expedited Hearing
18. Response to Motion to Compel Physical Examination
19. Order Denying Motion to Quash and Granting Motion to Compel Discovery
20. Order Denying Motion for Protective Order and Granting Motion to Compel Physical Examination

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on December 18, 2017.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Ameesh Kherani, Employee's Attorney | | | X | akherani@davidhdunaway.com |
| Evan Hauser, Employer's Attorney | | | X | Evan.hauser@knoxcounty.org |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

7